## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Criminal Action No. 04-401-02 (RMC)** |
| **THAER OMRAN ASAIFI,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Thaer Omran Asaifi, a/k/a Abu Harp, a/k/a Tam, entered a guilty plea to six counts of a superseding indictment on December 12, 2005.  Mr. Asaifi thereby admitted, through his plea and his execution of the associated Factual Proffer, that he had conspired to and/or attempted to and/or smuggled aliens into the United States.  When he reviewed his Presentence Investigation Report in April 2006, however, Mr. Asaifi had a change of heart and told his lawyer that he wanted to withdraw his plea.  Through new counsel,[1] Mr. Asaifi moved to withdraw his plea, asserting that he has a legally cognizable defense and there were imperfections in the Rule 11 colloquy.  The Court held a hearing on the motion on February 23, 2007, and took the matter under advisement.  The Court now renders its ruling.

Mr. Asaifi is a citizen of Jordan who is in this country involuntarily.  His new counsel argues that his overwhelming fear of the power and authority of the United States Government

---

[1] Mr. Asaifi's counsel moved to withdraw, and new counsel was appointed on June 2, 2006.

caused him to enter a guilty plea to avoid trial, because he thought a trial against a Muslim could not be fair.

Mr. Asaifi's plea was taken with great care, recognizing that he is a stranger to this country and its laws. The Court can find no material error in the Rule 11 colloquy. Further, the defense now offered — that Mr. Asaifi did not know that the migrants he assisted would be coming to the United States and not just to Equador or Peru – may be "legally cognizable" under other circumstances but here is belied by Mr. Asaifi's own statements and the entire record. The motion to withdraw the plea fails to present "a fair and just reason" for withdrawal under Federal Rule of Criminal Procedure 11(d), and will be denied.

## I. BACKGROUND

### A. Alleged Criminal Activities

In September 2004, a Grand Jury in the District of Columbia issued a multi-count Indictment charging Neeran Zaia, Thaer Asaifi,[2] and others with Conspiracy to Smuggle Aliens Into the United States, in violation of 18 U.S.C. § 371; Bringing Unauthorized Aliens to the United States for Commercial Advantage or Private Financial Gain, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii); Aiding and Abetting Certain Aliens to Enter the United States, in violation of 8 U.S.C. § 1327; Tampering with a Witness by Misleading Conduct, in violation of 18 U.S.C. §1512(b)(1); and Aiding and Abetting, Causing an Act to be Done, in violation of 18 U.S.C. §§ 2(a) and 2(b). Arrest warrants were issued based on the Indictment.

Mr. Asaifi was in Peru on an expired tourist's visa in 2004, which became known to the United States pursuant to an investigation conducted by the Bureau of Immigration Control and

---

[2] Ms. Zaia and Mr. Asaifi are husband and wife, married in Jordan in 2000. She is a citizen of the United States, and he is a citizen of Jordan.

Enforcement ("ICE") (formerly the Immigration and Naturalization Service ("INS")).  Def.'s Mot. to Withdraw Guilty Plea & Mem. of P. & A. ("Def.'s Mem.") at 1.  Peruvian authorities informed Mr. Asaifi that they were expelling him from Peru and, on September 9, 2004, they put Mr. Asaifi on a Delta Airlines flight supposedly going to Jordan.  *Id*.  Instead of Jordan, the flight landed in Atlanta, Georgia.  *Id*.  Federal agents arrested Mr. Asaifi and transferred him to Washington, D.C. *Id*.

"A significant amount of discovery was provided to [Mr. Asaifi and his lawyer, Elise Haldane], including audio tapes of conversations between a cooperating individual and the defendants."  *Id*. at 2.  Mr. Asaifi reviewed some of the tapes and the corresponding transcripts with an Arabic interpreter at the D.C. Jail in August 2005.  *Id*.  On October 6, 2005, the Grand Jury issued a 32-count Superceding Indictment against Ms. Zaia, Mr. Asaifi, and the other defendants, charging Conspiracy to Smuggle Aliens into the United States, in violation of 18 U.S.C. § 371; Bringing Unauthorized Aliens to the United States for Commercial Advantage or Private Financial Gain, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii); Alien Smuggling of a Deported Aggravated Felon, in violation of 8 U.S.C. § 1327; and Witness Tampering, in violation of 18 U.S.C. § 1512(b)(1).

**B.**  Plea Negotiations

With Mr. Asaifi's case scheduled to go to trial on January 9, 2006, Ms. Haldane, sought plea negotiations with the Government in the Fall of 2005.  Decl. of Assistant U.S. Attorney Bruce R. Hegyi ("Hegyi Decl.") ¶ 4.  Mr. Asaifi was debriefed by the Government on several occasions.  *Id*. ¶ 5.  After numerous discussions, Ms. Haldane and Mr. Hegyi agreed on a tentative framework for a Rule 11(c)(1)(C) plea for Mr. Asaifi.  *Id*. ¶ 6.

Mr. Asaifi was very concerned that he might be called as a witness in Ms. Zaia's trial.

After much discussion, the Government agreed that he would not be called by the Government *unless* his role in the conspiracy were misrepresented by others.  *Id.* ¶ 7.

> With the terms of a plea agreement tentatively framed between counsel, Ms. Haldane advised that Mr. Asaifi wished to discuss *candidly* with his mother in Jordan the facts of the case, his role, and the options available to him. However, Ms. Haldane further advised, Mr. Asaifi worried that any admissions in his conversation with his mother might later be used against him.  Because, in the Government's view, Mr. Asaifi's desire to speak candidly with his mother was reasonable and important and because his concerns about self-incrimination were understandable, the Government: (a) supported Mr. Asaifi's counsel in arranging for the extended, overseas, telephone call, and (b) voluntarily stipulated that it "would not use anything said by Mr. Asaifi to his mother during this telephone conversation against Mr. Asaifi."

*Id.* ¶ 8.  Thereafter, Mr. Asaifi expressed his desire to talk directly to the prosecutors about the tentative plea agreement.  *Id.* ¶ 9.  The parties came into Court to seek approval to transfer Mr. Asaifi temporarily from the custody of the U.S. Marshals to the Department of Homeland Security ("DHS"), of which ICE is a constituent agency, so that he could talk without the pain of the shackles used by the Marshals around his large wrists.  *See id.* ¶¶ 9-10.  The Court agreed and Mr. Asaifi was temporarily transferred to agents of DHS "so that Mr. Asaifi could be removed to the Commonwealth of Virginia to meet at length (accompanied by counsel) directly with the prosecutors with modified restraints."  *Id.* ¶ 10.

> Those discussions, which occurred on November 29, 2005, included, *inter alia*, the precise Counts of the superseding Indictment to which Mr. Asaifi would plead guilty together with some of the evidence the Government expected to introduce at trial to sustain its burden of proving beyond a reasonable doubt those Counts, and other Counts, in the superseding Indictment.
>
> Because a proper factual basis is required to support a guilty plea, at this meeting, Mr. Asaifi was shown, among other things, a photograph of L-1 [a migrant] together with then-INS documentation establishing that L-1 had

previously been deported from the United States for an aggravated felony. This was necessary, because Count 31 of the superseding Indictment charges Mr. Asaifi (and others) with attempting to smuggle L-1 into the United States after L-1's deportation from the United States for an aggravated felony.

*Id.* ¶¶ 11-12.  Mr. Asaifi then asked for, and received, time to pray privately.  *Id.* ¶ 13.

On November 30, 2005, the Government sent a proposed Plea and Factual Proffer to Ms. Haldane.  *Id.* ¶¶ 14-15.  This plea offer "had to be accepted by 6:00 p.m. on that date or it would have expired."  Def.'s Mem. at 2.  Ms. Haldane responded with certain detailed revisions, all of which were accepted by the Government.  Hegyi Decl. ¶ 16.  Under the 11(c)(1)(C) plea, Mr. Asaifi would plead guilty to conspiracy, four counts of alien smuggling, and one count of alien smuggling (deported aggravated felon).  Def.'s Mem. at 3.  In exchange, the Government would dismiss the remaining counts, agree to a sentencing range of 72 to 96 months, and agree to a testimonial restriction by which Mr. Asaifi would not be called as a witness in the case against co-conspirators unless a co-defendant portrayed Mr. Asaifi's role in a false or misleading light.  *Id.* Mr. Asaifi signed the revised Plea and Factual Proffer.  *See* Plea Agreement and Proffer, executed Nov. 30, 2005 [Dkt. #98].

The plea hearing was scheduled for December 5, 2005.  Mr. Asaifi asked the Court for more time to consider his options.  Dec. 5, 2005 Tr. at 2.  The Court, his counsel, and Government counsel all commented on the gravity of his decision, and the Government agreed to hold the plea offer open for an additional week.[3]  *Id.* at 2-4.

MS. HALDANE: Your Honor, we appreciate your scheduling this matter for today.  *The government and the defense have made what I can only call extraordinary efforts to make sure that Mr. Asaifi was aware of every detail of the plea offer.*  He had indicated that he was, would accept it and it is still

_____

[3]  One or more Arabic interpreters assisted during all court proceedings.

his desire to enter a plea of guilty.

However, he has asked for more time to consider it and given the fact that he's not a citizen of this country and it does involve a substantial amount of time, we have asked the government if they would accommodate his request.

. . . .

THE COURT: I'm more than agreeable to continuing the hearing because *I want to be sure that Mr. Asaifi does understand all aspects of the plea and his options and to decide in a way that when I question him about his voluntariness he will be able to say, yes, I really agree to enter this plea.* And if he wants to talk with [Ms. Haldane] more and consult with himself more before he enters the plea, that's perfectly fine by me.

. . .

MR. HEGYI: Your Honor, I agree with everything you just said. This is also in the government's eyes a somewhat unusual circumstance even above and beyond what the ordinary circumstance might be for an individual making a very important decision for the rest of their life.

In this instance, Mr. Asaifi is not from this Country, so he did not grow up under our system. . . . And that strikes me as requiring even more elasticity than might otherwise appear.

*Id*. at 2-3 (emphasis added).  The matter was continued for one week.

### C.  Plea Hearing

The plea hearing was rescheduled for December 12, 2005.  On the day before the rescheduled plea hearing, Mr. Asaifi again signed a Factual Proffer, a Proffer identical to the one he had signed previously on November 30, 2005.  *See*  Proffer executed Dec. 11, 2005 [Dkt. #97].  At the December 12 hearing, the Court first told Mr. Asaifi that it would ask him a series of questions to make sure that he was "acting in a knowing and voluntary way."  Dec. 12, 2005 Tr. at 3-4.  He was not sworn.  The Court asked him his age (35 years old) and whether he was then "under the influence of any drugs or alcohol."  *Id*. at 4.  Mr. Asaifi responded, "No."  *Id*.  Mr. Asaifi acknowledged that

he knew he would be deported at the end of serving his sentence.  *Id.*  When the Court asked him to say, in his own words, what were the crimes to which he would plead guilty, he responded, "conspiracy and smuggling [people]."  *Id.*  Mr. Asaifi told the Court that he had reviewed the Plea Agreement and had spoken with Ms. Haldane about it.  *Id*. at 4-5.  The Plea Agreement had been translated for him into Arabic.  *Id.*  When asked whether he was satisfied with the advice given him by Ms. Haldane, Mr. Asaifi answered affirmatively.  *Id*. at 5.  And when asked whether he was satisfied with the translations, he responded, "The best, yes."  *Id.*

The Court then discussed the charges to which Mr. Asaifi intended to plead guilty and the potential sentences for each of those.  *Id*. at 5-7.  The Court repeatedly told Mr. Asaifi that he was charged with conspiring to and/or having attempted to and/or having smuggled aliens "into the United States."  *Id*. at 5-6.  Mr. Asaifi repeatedly responded that he understood each charge.  *Id*.  The Court then asked, "Now have there been any other promises made to you that I have not covered?"  Mr. Asaifi responded: "I don't know [of any]."  *Id*. at 12.  The Court discussed with Mr. Asaifi each of his constitutional rights that a guilty plea would waive.  *Id*. at 7-8.  He responded that he understood all of his rights and was waiving them.  *Id*. at 8.

The 9-page Factual Proffer was, of course, written in English.  Mr. Asaifi speaks Arabic and some English.[4]  Therefore, the Court held up the Factual Proffer and confirmed with Mr. Asaifi that he had seen it; that it had been translated for him; that he understood "everything" that

---

[4] From observation and the record, it is clear that Mr. Asaifi is not fluent in English but has an ability to converse in English, enough to have injected levity into the December 12, 2005 plea hearing.  The Court repeatedly informed him of the potentially lengthy prison sentence and accompanying fines of up to $250,000 for each of the six Counts to which Mr. Asaifi was pleading guilty.  Then, Mr. Asaifi, with a bemused expression, told the Court that the imposition of court costs at the rate of $100 per offense was excessive.  Dec. 12, 2005 Tr. at 7.

was in the Factual Proffer; and that he had signed it.[5]  *Id.* at 12.  The Court asked if the Factual

Proffer "recounts a conspiracy to bring aliens from the near East through South American countries

into the United States," to which Mr. Asaifi responded, "Yes."  *Id.* at 13.

At the invitation of the Government, the Court established with the interpreter that

she had truly and accurately interpreted all of the settlement negotiations between the Government

and Mr. Asaifi.  *Id.* at 13-15.  The Court then addressed Mr. Asaifi again:

> THE COURT: So let me just repeat though because it's so important.
>
> MR. ASAIFI: Yes.
>
> THE COURT: Mr. Asaifi, that you feel confident that you understand the plea agreement and how it has been interpreted for you by the interpreter?
>
> . . . .
>
> MR. ASAIFI: Yes, Your Honor.

*Id.* at 15-16.  The Court then asked Mr. Asaifi how he pled to each count, beginning with, "How do

you plead to Count One, conspiracy to smuggle aliens into the United States?", to which in each

instance Mr. Asaifi answered, "Guilty."  *Id.* at 16-17.  The Court then accepted the guilty plea,

finding that Mr. Asaifi's plea was knowingly and voluntarily given.  *Id.* at 17.  Mr. Asaifi now seeks

to withdraw his plea, alleging that it was somehow tainted and alleging that he is innocent of the

charges to which he pleaded guilty.

## II.  LEGAL STANDARD

Before a sentence is imposed, a court may permit a defendant to withdraw his guilty

plea upon a showing of a "fair and just reason" for requesting the withdrawal.  Fed. R. Crim. P.

---

[5] As noted above, Mr. Asaifi actually signed the Factual Proffer twice, on November 30 and on December 11, 2005.

11(d)(2)(B); *see also* Fed. R. Crim. P. 32(d) (version of rule 32 prior to Nov. 1, 1987 amendment is applicable to offenses committed before date of amendment). It is a defendant's burden to prove valid grounds for withdrawal of his plea. *See* Fed. R. Crim. P. 11(d)(2)(B); *United States v. Rogers*, 387 F.3d 925, 932 (7th Cir. 2004).

In order to determine whether a defendant has shown a fair and just reason for withdrawal, a matter within the district court's discretion, *United States v. Jones*, No. 05-3166, slip op. at 7 (D.C. Cir. Jan. 5, 2007); *United States v. West*, 392 F.3d 450, 455 (D.C. Cir. 2004), a court must consider three factors: "(1) whether the defendant has asserted a viable claim of innocence; (2) whether the delay between the guilty plea and the motion to withdraw has substantially prejudiced the government's ability to prosecute the case;[6] and (3) whether the guilty plea was somehow tainted."[7] *West*, 392 F.3d at 455 (*quoting United States v. Hanson*, 339 F.3d 983, 988 (D.C. Cir. 2003)); *accord United States v. McCoy*, 215 F.3d 102, 106 (D.C. Cir. 2000).

A defendant seeking to withdraw a guilty plea before sentencing "must affirmatively advance an objectively reasonable argument that he is innocent, for he has waived his right simply to try his luck before a jury." *United States v. Cray*, 47 F.3d 1203, 1209 (D.C. Cir. 1995) (citation omitted). Where the motion asserts legal innocence and the plea was not properly entered or is otherwise constitutionally infirm, presentence withdrawal should be "rather freely allowed." *United States v. Barker*, 514 F.2d 208, 220 (D.C. Cir. 1975). Where the plea was properly entered and its constitutionality is not an issue, more substantial reasons must be provided for why the claim of

---

[6] Because the Government does not claim that it would be prejudiced if Mr. Asaifi were allowed to withdraw his plea, this factor is not at issue here.

[7] Generally, the test for the validity of a plea agreement is whether the plea represents a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).

innocence was not asserted earlier.

> Were mere assertion of legal innocence always a sufficient condition for withdrawal, withdrawal would effectively be an automatic right. There are few if any criminal cases where the defendant cannot devise some theory or story which, if believed by a jury, would result in his acquittal. . . . Were withdrawal automatic in every case where the defendant decided to alter his tactics and present his theory of the case to the jury, the guilty plea would become a mere gesture, a temporary and meaningless formality reversible at the defendant's whim.  In fact, however, a guilty plea is no such trifle, but "a grave and solemn act" which is "accepted only with care and discernment."  It follows that a court, in addressing a withdrawal motion, must consider not only whether the defendant has asserted his innocence, but also the reason why the defenses now presented were not put forward at the time of the original pleading.  It should go without saying that the standard is very lenient when the plea was entered unconstitutionally or contrary to Rule 11 procedures. . . . By the same token, however, *where the plea itself was properly entered withdrawal is not an automatic right and more substantial reasons for delay must generally be asserted*.

*Id.* at 221 (citations omitted; emphasis added).

Thus, the D.C. Circuit is "extremely reluctant" to reverse a district court's denial of a motion to withdraw a plea where the defendant failed to show error under Rule 11, even if the defendant makes out a legally cognizable defense. *Cray*, 47 F.3d at 1208.[8]  "[A] defendant who fails

---

[8] Mr. Asaifi argues that the Court should not make the plea colloquy the paramount consideration in this case but should balance the factors evenly. Def.'s Reply at 2-3.  While courts often have discussed the three factors as if they are to be balanced against one another, past cases in fact have turned on whether the guilty plea was taken in compliance with Rule 11. *Cray*, 47 F.3d at 1207.

> [N]one of our cases would have been decided differently if the only inquiry undertaken were whether the defendant's guilty plea was taken in compliance with Rule 11.  On the one hand, we have never held that a district court abused its discretion in denying a motion to withdraw a guilty plea where the defendant failed to show some defect in the taking of the plea under Rule 11.  On the other hand, where the defendant has shown his plea was taken in violation of Rule 11, we have never hesitated to correct the error.

to show  some error under Rule 11 has to shoulder an extremely heavy burden if he is ultimately to

prevail." *Id*.  "This is because our judicial system consecrates the guilty plea as a grave and solemn

act, and regards the withdrawal of guilty pleas as inherently in derogation of the public interest in

finality and the orderly administration of justice."  *United States v. Tolson*, 372 F. Supp. 2d 1, 9-10

(D.D.C. 2005) (internal quotation marks and citations omitted).

### III.  ANALYSIS

Mr. Asaifi contends that he has demonstrated a fair and just reason to withdraw his

guilty plea — that the plea colloquy that the Court conducted was not in compliance with Federal

Rule of Criminal Procedure 11 and he has a legally cognizable defense, namely that he did not intend

to transport illegal aliens into the United States.  Mr. Asaifi pointedly does not allege ineffective

assistance of counsel.  Def.'s Mem. at 5 n.4 ("Mr. Asaifi is not making a claim of ineffective

assistance of counsel. . . .  He made a decision [to plead guilty] because he made a mistake, not

because he believes his lawyer was at fault.").

### A.  The Plea Colloquy

While acknowledging the plea colloquy to be "quite thorough," Mr. Asaifi also

challenges it as containing "several irregularities."  Def.'s Mem. at 4.  More particularly, Mr. Asaifi

asserts that: 1) he was not put under oath; 2) he was not asked if his plea was the result of any force

or threats; 3) he was not sufficiently queried as to whether he understood the nature of the charges

and the elements of the offense; and 4) he was not adequately questioned about medications he was

---

*Id*. (citations omitted).  Recognizing that compliance with Rule 11 is a critical factor in determining
whether Mr. Asaifi has shown a fair and just reason why he should be permitted to withdraw his plea,
the Court still will examine each of the relevant factors.

taking for sleep deprivation. *Id.*[9]   The Court will address each issue in turn.

### 1. The Oath

First, Mr. Asaifi argues that the Court erred by failing to put him under oath at the time he entered his plea.  Mr. Asaifi correctly points out that he was not sworn to tell the truth before answering the Court's questions during the Rule 11 colloquy.  He also correctly notes that most of the Judges of this Court, including the undersigned, regularly administer an oath to defendants before they enter a plea in order to impress the gravity of the matter upon their minds and to increase the likelihood of truthful answers.  However, it is not a legal "error" to forego placing a defendant under oath for the Rule 11 colloquy that precedes a plea.  As Rule 11(b)(1) makes clear: "the defendant *may* be placed under oath . . . ."  (Emphasis added).  Thus, this alleged error provides no grounds for withdrawal of his plea.

### 2. Force or Threats

Second, Mr. Asaifi complains that his plea was fatally defective because the Court did not ask him whether he was forced or threatened to plead guilty.  This argument mis-reads Rule 11.  As pertinent, the Rule states:

> Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally, in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in the plea agreement).[10]

---

[9] Mr. Asaifi's objections to his plea appear to be with some of the facts contained in the Factual Proffer, as repeated in the PSR, though he has not specified his precise objections.  Even now, while asserting a desire to withdraw his plea, Mr. Asaifi still indicates that he would prefer to avoid a trial.  Def.'s Mem. at 5 (When Mr. Asaifi met with his new counsel, "[h]e disagreed with many of the facts from the factual proffer which had since been repeated in the PSR, but he was still insistent that he wanted to resolve his case without a trial.")

[10] Mr. Asaifi acknowledges that he was asked by the Court if there were any promises made to him beyond those contained in the Plea Agreement.  Def.'s Mem. at 10.

Fed. R. Crim. P. 11(b)(2).  In other words, Rule 11 requires a court to determine whether the plea is

voluntary and not a result of force or threats.  It does not mandate that a court ask the defendant if

he was forced or threatened.

In this case, the Court made the appropriate and required determination, based on the

extensive pre-plea negotiations and opportunities for Mr. Asaifi to consider his options, the terms

of the Plea Agreement itself,[11] and the fact that all documents were translated into Arabic for Mr.

Asaifi's clear understanding.[12]  In fact, Mr. Asaifi now states that he "was not coerced to take the

plea," Def.'s Mem. at 15, that he "is simply not a fighter" and therefore chose to plead guilty.  *Id.* at

11.  "Mr. Asaifi made a firm decision that he was not willing to go to trial . . . [and] authorized his

counsel to negotiate a plea offer for him." *Id.* at 14.  Ms. Haldane "negotiated a reasonable plea for

him, getting the government to make a number of concessions and to agree to a Rule 11(c)(1)(C)

plea." *Id.*  The Court had great familiarity with Mr. Asaifi and his circumstances by the time he

entered his plea, quite enough to find that his plea was knowing and voluntary.[13]

---

[11] The Plea Agreement states that "Mr. Asaifi represents, warrants and agrees that no other
or further prior and/or contemporary agreements, promises, understandings, and/or representations
have been made by the parties other than those contained in this written Agreement. . . . I fully
understand this Agreement and agree to it. I do this voluntarily and of my own free will.  No threats
have been made against me to make me enter into this Agreement. . . . Absolutely no promises,
agreements, understandings, or conditions have been made or entered into in connection with my
decision to plead guilty except those set forth in this Agreement." *See* Plea Agreement, ¶ 10 & p.
8.

[12] Mr. Asaifi characterized the translations as "[t]he best."  Dec. 12, 2005 Tr. at 5.

[13] If, however, there was an error in failing specifically to inquire whether he had been
coerced or threatened  — he denies any coercion or threats – such error was harmless. *See* Rule
11(h) ("A variance from the requirements of this rule is harmless error if it does not affect substantial
rights."); *United States v. Van Doren*, 182 F.3d 1077, 1080 (9th Cir. 1999) (failure to ask whether
plea was the result of coercion by threats or promises harmless error in light of repeated inquiries into
voluntariness generally).

3. <u>Nature of the Charges</u>

Third, Mr. Asaifi challenges the adequacy of the colloquy that preceded his plea, asserting that he was not sufficiently questioned regarding his understanding of the nature of the charges and the elements of the offense.  As part of the Rule 11 colloquy, "the court must inform the defendant of, and determine that the defendant understands . . . (G) the nature of each charge to which the defendant is pleading."  Fed. R. Crim. P. 11(b)(1)(G).  Mr. Asaifi's challenge on this ground fails because in fact he was adequately questioned.

Mr. Asaifi's plea was not a hurried affair.  He was given additional time to consider his options, consult with counsel, and consult with his family in Jordan.  Also, the nature and extent of the Government's evidence against him was revealed in plea negotiations.  At the December 12, 2005, hearing at which his plea was taken, the Court asked Mr. Asaifi to describe in his own words the crimes to which he would be entering a plea.  He answered, in English and on his own, "the conspiracy and smuggling."  Dec. 12, 2005 Tr. at 4.  The Court then inquired whether he meant smuggling people, and he answered "Yes."  *Id.*  The Court carefully went through each Count to which Mr. Asaifi was pleading guilty, obtaining his positive responses to questions concerning the charge of conspiracy to smuggle aliens into the United States, and the charge of bringing or attempting to bring aliens into the United States for money.  *Id.* at 5.  With regard to the Factual Proffer, the Court made sure that Mr. Asaifi had seen the document and had read a translated version.  *Id.* at 12.  The Court asked Mr. Asaifi if he understood everything that was contained in the Factual Proffer and Mr. Asaifi assured the Court that he did.  *Id.*  The Court summarized the Factual Proffer and asked Mr. Asaifi whether the Factual Proffer set forth "a conspiracy to bring aliens from the near East through South American countries into the United States."  *Id.* at 13.  Mr. Asaifi answered,

"Yes." *Id*. Thereafter, upon specific inquiry by the Court, Mr. Asaifi entered a plea of "guilty" to Counts Three, Six, Twenty, Thirty, and Thirty-one. *Id*. at 16-17. The Court then accepted his guilty plea and found that it was made knowingly and voluntarily. *Id*. at 17.

Although Mr. Asaifi now argues that he was insufficiently questioned about the nature of the charges, he offers no suggestion as to what further questions might have been posed or what further explanation might have been given. Mr. Asaifi had the benefit of experienced counsel, against whom he lodges no complaint, and who went to "extraordinary efforts to make sure that Mr. Asaifi was aware of every detail of the plea offer." Dec. 5, 2005 Tr. at 2. Moreover, even now he does not assert that he did not understand the nature of the charges and the elements of the offenses when he pled guilty on December 12, 2005. *See* Asaifi Decl. ¶ 15 ("I understood that the government was accusing me of helping people come to the United States."). Thus, any perceived error is necessarily harmless. *See* Rule 11(h) and *see United States v. Smith*, 184 F.2d 415, 417 (5th Cir. 1999) (court's failure to insure personally that defendant understood the charges harmless error, where defendant does not maintain she did not understand the charges and does not challenge her attorney's assertion that he reviewed the indictment with her and she understood the charges).

4. <u>Medications</u>

Finally, Mr. Asaifi asserts that he was not adequately questioned about prescription medications for sleep deprivation because at the plea hearing the Court inquired only if he were "under the influence of any drugs or alcohol." Dec. 12, 2005 Tr. at 4.[14] Mr. Asaifi presents documentation from the D.C. Jail that indicates that he was having trouble sleeping in November and December of 2005 and a doctor had prescribed a sleep aide to him. While he cannot remember if,

---

[14] Mr. Asaifi responded "No" to the inquiry regarding whether he was under the influence of drugs or alcohol. Dec. 12, 2005 Tr. at 4.

in fact, he took any medication on the evening of December 11, 2005, Mr. Asaifi argues that the Court should have asked specifically if he were under the influence of medication. Def.'s Mem. at 13.

This argument is disingenuous as demonstrated by the terms of the Plea Agreement, which was much negotiated, translated, and discussed. The Plea Agreement, signed by Mr. Asaifi, indicates, "I am not under the influence of any medication, drug, alcohol, or anything else that could prevent or impede me from understanding fully this Agreement." Plea Agreement at 8 [Dkt. #98]. Mr. Asaifi now tells the Court that he intended to go through with the plea at all costs. Def.'s Mem. at 9. Thus, even if Mr. Asaifi had any misunderstanding of the scope of the Court's question concerning drugs and even if the Court had specifically inquired if he was taking prescription medication, Mr. Asaifi would have responded in the same way.

In addition, the Court notes that it twice asked Ms. Haldane, counsel for Mr. Asaifi at his plea, if there were further questions the Court should pose before it took a plea and twice Ms. Haldane responded, "No, Your Honor." Dec. 12, 2005 Tr. at 13 & 16. Because Mr. Asaifi is not making a claim of ineffective assistance of counsel, Def.'s Mem. at 5 n.4, the Court concludes that there were no further questions that needed asking. The unknown *possibility* that Mr. Asaifi took a sleep aid the night before his plea does not invalidate the Rule 11 colloquy.

**B.** Actual Innocence

Mr. Asaifi relies on his foreign birth, the abrupt fashion in which he was brought into this country, his lack of familiarity with our judicial system, and his Muslim religious beliefs to explain why he signed the Plea Agreement, signed the Factual Proffer twice, answered the Court's questions, and pled guilty to conspiracy and smuggling migrants into the United States when, he now

-16-

asserts, he is actually innocent.  He says he was afraid of a trial and had no option but to agree to everything the Government proposed because "he had to agree to everything in those documents in order to be able to plead guilty."  Def.'s Mem. at 15.

This argument mis-casts history.  Ms. Haldane is an experienced and competent counsel who negotiated a very favorable plea, as Mr. Asaifi admits.  *See* Def.'s Mem. at 14 ("[C]ounsel negotiated what appeared to be a reasonable plea . . . .").  Every opportunity was given to Mr. Asaifi to enable him to consider his course of action:  arrangements were made for an overseas call so that he could speak with his mother; the United States agreed that it would not use anything he might say on that phone call; prosecutors met face-to-face with Mr. Asaifi and his lawyer on multiple occasions, even arranging for him to be transferred to ICE so that he would be more comfortable without the restraints used by the Marshals; the United States agreed to a testimonial restriction in the Plea so that Mr. Asaifi will not be called to testify against his wife;[15] when Mr. Asaifi identified several factual assertions in the Factual Proffer with which he could not agree, they were removed; the plea documents were translated into Arabic so that Mr. Asaifi could read and consider them without reliance on a translator; when, on December 5, 2005, Mr. Asaifi asked for more time to consider the Plea, the Court granted him an additional week; and, finally, Mr. Asaifi assured the Court that he had read and understood the Plea Agreement and the Factual Proffer and that he wanted to enter a guilty plea.  Because the Plea Agreement and Factual Proffer were clearly negotiated with Mr. Asaifi's full knowledge – and changes were made at his request and/or insistence – it is difficult now to credit his lawyer's argument that Mr. Asaifi felt powerless and thought he had to accept false statements.

---

[15] *See* Asaifi Decl. ¶ 9 (" The 'Testimonial Restrictions' paragraph was the most important because it was there at my request.")

Which brings us to his claim of actual innocence.  Counsel for Mr. Asaifi tells the Court that "Mr. Asaifi had no intent to assist people trying to get to South America or the United States."  Def.'s Reply at 5.  The Declaration of Thaer Asaifi asserts that he had seen at least two of the migrants in question, L-1 and F-1, in Jordan and that he picked up and delivered travel documents for F-1, but he understood that the migrants were "traveling to Ecuador, South America, not to the United States."  Asaifi Decl. ¶ 4.  He remembers "at least one occasion" being present at the "Saudi Travel Agency in Amman, Jordan for a meeting arranged for a number of Iraqis interested in arranging travel from Jordan."  *Id.* ¶ 6.  Further, Mr. Asaifi remembers being with Ms. Zaia "on occasion when she had conversations with individuals interested in traveling from Jordan" but he did not pay attention or understand most of what was said because the conversations were in Chaldean, not Arabic.  *Id.*

Mr. Asaifi's claim of actual innocence rests on the theory that he was unaware that the smuggled migrants were destined for the United States.  Contrary to this claim, there are seven places in the Plea Agreement in which he admits that aliens were brought, or attempted to be brought, into the United States.  There are twenty-two places in the Factual Proffer in which he admits that he brought, or attempted to bring, aliens illegally into the United States.  He assured the Court that the documents had been translated for him, that he had read and understood them, and that he was satisfied with his counsel, as he remains to this day.  *See* Dec. 12, 2005 Tr. at 4-5, 12; Def.'s Mem. at 5 n.4.  The Court asked, in reciting the critical facts of the Factual Proffer and in taking his plea to each count, whether Mr. Asaifi knew (and admitted) that he was accused of bringing or attempting to bring aliens into the United States.  Dec. 12, 2005 Tr. at 5-6, 12-13.

Despite these admissions and the clear record on which they are based, Mr. Asaifi

-18-

says that he felt powerless in a foreign country and that, having decided not to go to trial, he had to accept everything in the Government's documents in order to plead guilty. *See* Def.'s Mem. at 14-15. Mr. Asaifi's claim of powerlessness is inaccurate as demonstrated by the very changes Mr. Asaifi and his counsel negotiated in the Plea Agreement. Even if Mr. Asaifi's claim were accurate, the argument would not necessarily support a withdrawal of the plea. "A guilty plea is very typically entered for the simple 'tactical' reason that the jury is unlikely to credit the defendant's theory or story. Indeed, so long as a factual basis for the plea exists, a court may accept such a 'tactical' guilty plea even from a defendant who continues to assert his innocence." *Barker*, 514 F.2d at 221 (citation omitted). *Having decided not to go to trial*, Mr. Asaifi accepted the best deal his counsel could negotiate under the circumstances. He acknowledges that he did not want to go to trial, that he is not a fighter, and that – even now – he would prefer to avoid a trial. Def.'s Mem. at 5 & 11.

The Court can only conclude that Mr. Asaifi knowingly made the tactical choice to accept the plea as it was ultimately negotiated rather than risk a trial. This choice was not irrational given the Government's evidence against him, which included "several conversations with a government informant/agent in which he allegedly [told] the informant that *he has people in Jordan waiting to go to the United States.*" Def.'s Mem. at 9 n.7 (emphasis added).[16] Mr. Asaifi was not "alone" in the judicial process, but was represented by experienced and competent counsel who admittedly negotiated a favorable plea. *See* Def.'s Mem. at 14. Mr. Asaifi's pre-plea requests were

---

[16] Mr. Asaifi argues that "these conversations might need to be explained" but that "they do not go to his state of mind in 2001 and 2002, which is at the heart of the offenses he pled to." Def.'s Mem. at 9 n.7. The argument presents an overly-narrow reading of the counts to which Mr. Asaifi pled guilty. Count One alleges that Mr. Asaifi participated in a continuing conspiracy, from early 2001 to September 2004, to bring aliens illegally into the United States. Count Three alleges illegal activity in 2001-02. Count Six alleges illegal conduct by Mr. Asaifi in 2001 and 2002. Count Twenty alleges acts that occurred in 2002 and 2003. Counts Thirty and Thirty-One allege conduct relating to persons still in South America.

all granted by the prosecutors or the Court.  His current claim of confusion, fear, and uncertainty

cannot stand in the face of the extraordinary efforts to ensure that his rights were fully protected and

his current acknowledgment that he fully intended his plea.

## IV.  CONCLUSION

Finding that "[i]t is neither unfair nor unjust . . . to hold the defendant to his . . .

representations to the Court" at the Rule 11 hearing, *United States v. Horne*, 987 F.2d 883, 837 (D.C.

Cir. 1993), Mr. Asaifi's motion to withdraw his plea [Dkt. #114] will be denied.  A memorializing

order accompanies this Memorandum Opinion.


_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

DATE: May 3, 2007